Richard S. Heller, J.
This claim arises under a contract for electric work at the Marcy State Hospital. Claimant seeks to recover the sum of $11,696.60 alleging that this was the cost of extra work and additional material required by the State beyond the limits of the contract.
Under the contract, the claimant was required to install a considerable amount of underground electrical conduit, with manholes where the conduit changed direction. Standard speci *229 fications of the Department of Public Works for underground electric conduit systems are contained in section 31g and article 3160 pertains directly to conduits. Paragraph 6 of that article provides that ‘ ‘ Underground conduits shall be fiber or precast concrete.”
Paragraph 14 provides for the encasement in concrete of fiber conduits and states that no encasement is required for precast concrete conduit. An amendment to paragraph 14 provided for a specified concrete encasement of fiber or Korduct conduits, Korduct being a trade name for a fiber conduit manufactured by Johns-Manville Co. The amendment also provided “ Encasement is not required for precast concrete conduit, rigid steel conduit or heavy wall transite.” Neither rigid steel conduit nor heavy wall transite are referred to in paragraph 6 of article 3160 referring to materials.
Paragraph 17 of article 3160 requires that where fiber conduit which required encasement crossed filled ground, or an open excavation the concrete encasement also had to be reenforced with steel rods. It also provides that no re-enforcement is required where rigid steel conduit is used. Where precast concrete conduit crossed filled ground or an open excavation it was required that a re-enforced concrete footing be furnished over the crossing and for a distance on each side of the excavation sufficient to provide proper support and this re-enforcement was - to be “as required and directed at time of installation or as shown on the plans. ’ ’ There is no reference in paragraph 17 to heavy wall transite.
An amendment to paragraph 17 provides that ‘ ‘ filled ground includes the area adjacent to new manholes.”
In undertaking the performance of the contract, the claimant first applied to the State for permission to use fiber conduit without concrete encasement. This request was not approved.
The claimant then requested approval of “Johns-Manville Heavy Wall Electric Transite for direct burial without concrete,' for use throughout new underground system as shown on State drawings, under roads, etc. ’ ’
The State approved the use of the specified transite conduit “for direct burial without concrete” and with the specific admonition that “ all contract requirements will be met ”.
The claimant installed the heavy wall transite material throughout without concrete encasement or re-enforced concrete footings at any point. After installation it was found that where the heavy wall transite conduit had been installed in filled ground and particularly around the manhole installations made by the claimant, it had cracked and broken, apparently *230 due to the settling of the fill. The claimant then replaced the broken transite conduit, again without the installation of any concrete encasement or re-enforced footings.
Tests thereafter revealed that the transite had again broken in the filled areas. Claimant then proposed and the State approved the installation of a concrete base from undisturbed ground around manholes, tying this base into the manhole walls with a concrete envelope around all conduits at the locations in question, forming a part of the concrete base below the conduits.
This claimant was an experienced electrical contractor and was acquainted with the characteristics of heavy wall transite conduit. The provision of paragraph 17 of article 3160 of the specifications as amended requires the use of re-enforced concrete envelope where fiber conduit is utilized in filled ground and it follows that this would be a requirement for any conduit having the characteristics of fiber conduit. Any conduit utilized having the characteristics of precast concrete would require a re-enforced concrete footing where it was installed in filled ground. The specifications clearly require such re-enforcement or footings around new manholes by the amendment to paragraph 17 of article 3160.
The only type of conduit where some such special treatment providing . support was not required is rigid steel conduit. Any conduit having the characteristics of rigid steel conduit would not have required this alleged extra work and had the State so directed it would have been beyond the contract limits.
Here however, the plain meaning of the contract required the utilization of at least re-enforced concrete footings around the new manholes where the characteristics of the conduit used had no greater strength than precast concrete conduit.
Concrete footings to support the heavy wall transite over filled ground which included areas around the newly installed manholes were required by the contract and the work was not an extra beyond the limits of the contract. There remains for determination whether the State was under any obligation to act affirmatively to prevent both of the original installations by this-contractor of the heavy wall transite without supporting concrete footings. The only basis for such an argument rests in the above-quoted language from paragraph 17 of article 3160 of the contract.
The court finds that this language did not impose upon the State any requirement to affirmatively stop the contractor in his procedure and require the installation of concrete footings.
*231 A different situation would be presented had the contractor recognized in the first instance that concrete footings were required and then the State had failed to designate or had improperly designated the areas where such footings were required. That however was not the situation here. The contractor here in the first instance and even in the second instance, took the position that the contract did not require any such footings and the State then under the general conditions of the contract and specifically under article 13 and article 17, had the option of stopping the work and resolving the dispute at that time or letting the work proceed to whatever the ultimate result might be. "Where the State employs an independent contractor, that contractor must be free to do the work in the manner which he deems proper and in compliance with the contract. To hold otherwise would deprive every contractor of the freedom to reap the benefits of his own ingenuity and his own methods of performing the work whereby he might increase his profits. That freedom also entails the risk which the contractor here assumed and will not give him the privilege of casting that risk back upon the State.
Here the contractor affirmatively chose the material within the limits designated by the State and affirmatively chose the manner in which he would perform the work, maintaining that these were in accordance with the contract. The work for which recovery is sought results solely from the contractor’s miscalculation and he is not entitled to recover.
The claim must be and is hereby dismissed.
The foregoing constitutes the written and signed decision of this court. Let judgment be entered accordingly.